IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08–cv–00516–PAB–KMT


ROBIN F. CROSS,

     Plaintiff,

v.

THE QWEST DISABILITY PLAN, also known as and operating under the designation of
Qwest Disability Services, and formerly known as the US West Disability Plan, and
QWEST COMMUNICATIONS INTERNATIONAL INC., also known as Qwest Inc.,

     Defendants.

---

**ORDER**

---

     This matter is before the court on "Plaintiff's Verified Motion for Attorney's Fees and

Costs" [Doc. No. 116 (sealed)[1]] (hereinafter "Motion") filed on May 19, 2010.  The Defendants

filed their "Response to Plaintiff's Verified Motion for Attorney's Fees and Costs" [Doc. No.

122] (hereinafter "Response" or "Resp.") on June 14, 2010.  Thereafter, Plaintiff filed a Reply

[Doc. No. 126] on June 18, 2010.  The matter was referred to this court by District Judge Philip

A. Brimmer on October 26, 2010 and a hearing was held on the motion on November 9, 2010.

At that time the court took the matter under advisement.

---

     [1] Each of the sealed documents herein contains an alternate docket number for the public
record.  For clarity and consistency, the court will reference the docket number of the actual
sealed documents throughout this Order.

Thereafter, Plaintiff filed "Plaintiff's Attorney's Second Supplemental Legal Services Affidavit" [Doc. No. 138-2] (hereinafter "Second Affidavit") as well as "Plaintiff's Attorney's Third Supplemental Legal Services Affidavit" [Doc. No. 146] (hereinafter "Third Affidavit"). The Second Affidavit concerned billing for legal services between June 18, 2010 and November 19, 2010, the date of the filing of the Second Affidavit.   The filing of the Second Affidavit triggered a response from the defendants [Doc. No. 141] and a reply from Plaintiff [Doc. No. 144].  The Third Affidavit was filed on December 21, 2010 and to date no response has been filed by the Defendants.  The Third Affidavit addresses billings from expert witness Sawn E. McDermott for services rendered on October 29, November 8 and November 9, 2010.

### BACKGROUND

Plaintiff filed her original ERISA Complaint in Denver District Court on December 20, 2007, asserting wrongful denial of disability benefits under Qwest's ERISA Plan (hereinafter "Plan").  [Doc. No. 2.]  Defendants removed the case to this Court on March 13, 2008 and filed their Answer on April 2, 2008. [Doc. No. 9.].  The Administrative Record was filed on August 20, 2008 [Doc. No. 23] and motions and other discovery issues were addressed thereafter.  Prior to initial briefing on the merits which was due to begin on January 15, 2009, the parties began negotiating in earnest and notified the court on January 15, 2009 they had reached a settlement. On January 16, 2009, the parties entered into a Confidential Settlement Agreement Regarding Disability Benefits [Doc. No. 116-1] (hereinafter "Settlement Agreement" or "Setl. Agr.").

The settlement entered into by the parties contemplated the retention of two independent medical examinations ("IMEs") of Plaintiff, with separate medical professionals charged with

evaluating Plaintiff's then current medical and mental health condition.  (Setl. Agr. ¶ 2.)

Defendants were to pay for both of the IMEs, although the parties would jointly select the

providers.  (*Id*.)  The parties agreed that if one or both of the medical providers conducting the

IMEs opined that Plaintiff was disabled, Defendants would grant disability benefits retroactive to

the date of the original denial and would place Plaintiff on the Plan as disabled going forward.

(*Id*. at ¶ 3.)  The IMEs were completed in May 2009 and both medical professionals concluded

that Plaintiff is disabled under the Plan.  (Mot., Ex. 2.)

Upon the findings in the IMEs, and pursuant to the Settlement Agreement, Defendants

outlined in a September 24, 2009 letter to Plaintiff's counsel the disability benefits payable to

Plaintiff.  (Resp., Ex. A)  Several months later on December 10, 2009, the Plan provided a more

detailed explanation of the benefits structure directly to Plaintiff.  (*Id*., Ex. C).  Plaintiff received

a lump sum payment of her back benefit payment in late December 2009 and began receiving a

monthly disability payments in early 2010.  (*Id*.)

The Settlement Agreement provided that in the event Plaintiff was found to be disabled

and qualified for disability payments under the Plan, Defendants would pay Plaintiff's

reasonable attorney's fees incurred in the pursuit of her disability benefits under ERISA, Title 29

U.S.C.

§ 1132(g). (Setl. Agr. at § 3(c ).)  That section of the Settlement Agreement reads

> c. Legal expenses: Defendants will also pay the reasonable attorney's fees
> and expenses of Cross for her pursuit of disability benefits promptly after a
> determination by one or both of the medical evaluators that she is currently
> disabled. Cross will cause her legal counsel to be cooperative in disclosing and
> documenting the legal services for consideration by defendants. Defendants will

3

promptly and reasonably consider the services and the asserted amounts for reasonable attorney's fees in conjunction with standards for allowance of attorney's fees for claims for benefits under ERISA, 29 USC § 1132(g).[2] The parties will promptly examine the question of reasonable attorney's fees for the services of Cross' counsel to reach an agreement about reasonable attorney's fees to be paid by defendants within 30 days after the determination of disability. In the absence of agreement by the parties, the parties will have the matter of reasonable attorney's fees under ERISA submitted to the District Court for ruling on the amount of fees and expenses by the U. S. Magistrate Judge assigned to the litigation. In that event attorney's fees and legal expenses will be determined through a motion, affidavit, documentation, and, if necessary hearing before the U.S. Magistrate Judge under this Settlement Agreement. The parties agree that the decision by the U. S. Magistrate Judge will be final and binding and defendants will promptly pay the amount to plaintiff's counsel.

(Setl. Agr. at ¶ 3(c).)

Title 29 U.S.C. § 1132(g)(1) gives courts discretionary authority to award reasonable attorney's fees and costs in an ERISA action.  Although fees are not awarded as a matter of course, *Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 108 (10th Cir. 1983), in this case the parties are in agreement that reasonable attorney's fees and costs will be awarded as a result of the parties' Settlement Agreement.  The question before the court concerns the reasonableness of the plaintiff's demand.

---

[2] Title 29 U.S.C. § 1132(g)(1) provides: "(g) Attorney's fees and costs; awards in actions involving delinquent contributions; (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

***DEMAND***

Plaintiff's Motion originally demanded attorney's fees in the amount of $115,000 plus costs and expert witness fees based on the Contingent Fee Agreement in place between Plaintiff and her counsel.  (*See* Mot., Ex. 9, Contingent Fee Agreement.)  However, as part of his Reply and more emphatically at the November 2010 hearing, Plaintiff's counsel conceded that an award of a contingent fee for a proceeding under ERISA was improper.[3]  Instead, Plaintiff's counsel now seeks reimbursement for approximately 239.5 hours of his professional time to be charged at the rate of $500.00 per hour rather than at his normal billing rate of $290.00 per hour, for a total of $119,750.00.[4]  Plaintiff relies upon a case from this district, *DeGrado v. Jefferson Pilot Financial Ins. Co.*, No. 02-cv-01533-WYD-BNB, 2009 WL 1973501, at *10 (D. Colo. July 6, 2009), in support of her claim.  Additionally, Plaintiff seeks reimbursement of costs in the amount of $413.76, reimbursement for expert witness fees in the amount of $3,210.00 for Shawn McDermott, whom Plaintiff presented on the issue of reasonable attorney's fees in ERISA cases, and reimbursement for $1,224.00 for the services of a law clerk helping with work on the case.

─────────────────────

[3] In fact, the court has been unable to find any appellate court decision upholding an attorney fee award based on a contingent fee agreement under ERISA § 1132(g) in non-common fund cases. *But see Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998) (risk multipliers are appropriate in cases that are initiated under ERISA and settled with the creation of a common fund because the award in a common fund case is made pursuant to the principles of equity rather than on the statutory provisions of § 1132(g).)

[4] That same amount of time, billed at Plaintiff's attorney's personal billing rate of $290.00 per hour, would result in a total fee calculation of $69,455.00.

Defendants do not object to the hourly billing rate of Plaintiff's counsel of $290.00 per hour; however, they do object to the court allowing the rate to be inflated to $500.00 per hour based on *DeGrado*.  Further, Defendants object to certain categories of billed hours as being non-compensable, including time spent in the administrative phase of the case prior to the commencement of litigation, clerical and other administrative tasks billed at senior attorney rate, attorney time spent after the determination that Plaintiff would receive disability benefits under the Plan, any costs associated with Plaintiff's expert, Shawn McDermott, and the excessive fees attributable to pursuit of an attorney fee award by this court.

### *LEGAL STANDARD*

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *Id.*  In other words, "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)  "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'"  *Id.*

The party seeking an award of fees should submit specific evidence supporting the hours worked and rates claimed.  *Hensley*, 461 U.S. at 433.  The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by

6

submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). "A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time." *Id.*; *see also Robinson*, 160 F.3d at 1281 ("a district court may discount requested attorney hours if the attorney fails to keep 'meticulous, contemporaneous time records' that reveal 'all hours for which compensation is requested and how those hours were allotted to specific tasks'") (quotation omitted).

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (*quoting Ramos v. Lamm*, 713 F.2d 546, 553 10th Cir. 1983) *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725 (1987) (overruling based on ground that multipliers or enhancement of reasonable lodestar fee to compensate for assuming risk of loss is impermissible under usual fee-shifting statute). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id.*; *see also Hensley*, 461 U.S. at 434, 437 (counsel are expected to exercise their billing judgment, "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). When analyzing the hours of attorney work expended on a litigation matter, "[a] district court should

approach this reasonableness inquiry 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients . . . .'" *Id.* (quoting *Ramos,* 713 F.2d at 555).

When a court examines the specific tasks listed by an attorney claiming fee reimbursement, the court must first determine if the fees are properly chargeable under the circumstances of the case and then whether the number of hours expended on each task is reasonable. *Id.* "The *Ramos* court suggested that among the factors to be considered were (1) whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers." *Robinson*, 160 F.3d at 1281 (quoting *Ramos*, 713 F.2d at 554). "In this analysis, [the court should] ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id.*

Once the court determines that a fee for the services at issue is chargeable and determines that the number of hours spent is reasonable, the court must decide whether there are other factors that require the fee award to be adjusted upward or downward. One of the most significant factors affecting this calculation is the "results obtained." *Hensley*, 461 U .S. at 434. "Where a plaintiff has obtained excellent results, the attorney should receive a fully compensatory fee." *Id.*

The Tenth Circuit has also opined that "[a] general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long

as there is sufficient reason for its use." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203

(10th Cir. 1986) (reduction in fees appropriate due to inexperience of an attorney which led to

over-billing). The Supreme Court in *Hensley* found a one-third reduction of an attorney's hours

to be proper "to account for his inexperience and failure to keep contemporaneous time records."

*Hensley*, 461 U.S. at 438 n. 13). For instance, in *Delaware Valley Citizens' Council for Clean

Air*, the Supreme Court expressed no disagreement with general reductions by the district court

of up to forty-eight percent in time claimed by various counsel for "unnecessary, unreasonable or

unproductive" time. 478 U.S. at 546. "However, '[t]he record ought to assure [the reviewing

court] that the district court did not 'eyeball' the fee request and cut it down by an arbitrary

percentage.' " *Robinson*, 160 F.3d at 1281 (quoting *People Who Care v. Rockford Bd. of Educ.,

Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996).) As the court stated in *Case*

> Because mandating that the district court identify hours reasonably expended by
> billing entry or litigation activity would, in many cases, be practically impossible,
> '[t]here is no requirement ... that district courts identify and justify each
> disallowed hour. Nor is their any requirement that district courts announce what
> hours are permitted for each legal task.'... In fact, in cases such as this one, in
> which the parties generated thousands of pages of written work product and the
> appellants submitted well over a hundred pages in billing statements with several
> entries per page, '[i]t is neither practical nor desirable to expect the trial court
> judge to have reviewed each paper in th[e] massive case file to decide, for
> example, whether a particular motion could have been done in 9.6 hours instead
> of 14.3 hours.... Instead, '[a] general reduction of hours claimed in order to
> achieve what the court determines to be a reasonable number is not an erroneous
> method . . . . (quotations omitted).

157 F.3d at 1250. *See also Carter v. Sedgwick County*, 36 F.3d 952, 956 (10th Cir. 1994)

(upholding trial court's decision to reduce each attorney's time by half, finding that billing

records contained unnecessary entries and duplication of services).

The Tenth Circuit has indicated that items that are normally itemized and billed in addition to an attorney's hourly rate may be included in fee allowances if reasonable in amount. *Ramos*, 713 F.2d at 559.  These costs are distinct from the costs that are awarded to the prevailing party under Title 28 U.S.C. § 1920.  *DeGrado*, 2009 WL 1973501, at *11.  Costs can include such things as an attorney's travel expenses if there is a finding that such costs would normally be billed to a private client, *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990), long distance charges, copying costs and related expenses if they are usually charged separately in the area, *Ramos*, 713 F.2d at 559, and computer research as "a substitute for an attorney's time" *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1180 n.10 (10th Cir. 2005).

### *ANALYSIS*

#### A.    *Hourly Billing Rate for Dennis P. Walker*

Relying upon *DeGrado*, 2009 WL 1973501, at *10, Plaintiff argues that although her counsel routinely billed his time to clients at $290.00 per hour for professional services on ERISA cases, this court should find that a reasonable hourly rate for Mr. Walker's reimbursement of fees by Defendants should be $500.00.  Plaintiff has apparently seized on the following statement with appears in the order of Chief District Judge Wiley Y. Daniel in *DeGrado*:

> Mr. [Attorney] is an experienced litigator with over 35 years of legal experience. While his rates may generally be high for this area, the Colorado Bar Association

> ["CBA"] 2008 Economic Survey (relied on by Defendant) reported a $500 average by ERISA practitioners.

*Id.* at *10.[5]  This, according to Plaintiff, is justification for this court to metamorphose Mr. Walker's billing rate from $290.00 per hour to $500.00 per hour.  In spite of the statement quoted above, however, Chief Judge Daniel did not approve an hourly rate of $500.00 per hour for any attorney in *DeGrado*.  Instead, Chief Judge Daniel ultimately allowed fees for an out-of-state attorney of between $250.00 and $400.00 per hour, depending on the date the hours were actually expended by the attorney.  In other words, Chief Judge Daniel allowed as compensable fees the amount the attorney was actually billing at the time the work on the case was performed. *Id.*

The Supreme Court has held that a reasonable hourly rate is often calculated by examining the prevailing market rates of the relevant community.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  However, *DeGrado* does not support the proposition that fees can be recovered for all experienced ERISA plaintiff's attorneys at a billing rate of $500.00 whether or not the attorney actually bills clients at that rate.  Given the holding of the case, the statement so favored by the plaintiff does not even rise to the level of *dicta*.  A careful review of *DeGrado* reveals that the court recognized that *Ramos* implicitly directs that fees be determined on the basis of what an attorney actually bills to paying clients.  *DeGrado,* 2009 WL 1973501, at *11.  *See Ramos*, 761

---

[5] This court notes as an ancillary matter that, according to Plaintiff's retained expert, the hourly rate reported by the CBA as an 'average' was based upon a mere three attorneys who responded to the survey.  (Affidavit of Shawn McDermott [Doc. No. 116-3] (hereinafter "McDermott Affidavit") at ¶18.)  The court finds that this is a statistically irrelevant number given the small number of respondents.

F.2d at 555 (holding that the hourly rates at which compensation is awarded should reflect rates in effect at the time the fee is being authorized by the court, rather than those in effect at the time the services were performed.)  In *DeGrado,* the court noted in making its hourly rate decision that the attorney in question was actually requesting reimbursement only at the rate for which he was actually billing in the past – a rate much lower than his rate at the time the court was considering the award.  The question presented to Chief Judge Daniel was whether a rate of $400.00 per hour actually billed to his clients was reasonable in the context of that ERISA case. *DeGrado,*  2009 WL 1973501, at *10-11.

In his original Affidavit supporting the Motion [Doc. No. 116-6] (hereinafter "First Walker Affidavit"), Attorney Walker stated that "[d]uring the representation of Robin F. Cross by Dennis P. Walker, the rate for the services of Dennis P. Walker has been customarily and regularly $290.00 per hour" and he further attested that his hourly rates had not been raised during the time period of his representation of the plaintiff.  (First Walker Aff. at 1-2.)  There was no testimony presented that AttorneyWalker's rate was at any time different from the $290.00 per hour rate he billed paying clients or that the rate was not at or close to the prevailing rate in Colorado at the time.  (First Walker Aff. at 2.)  In the McDermott Affidavit, Plaintiff's own expert attested that his billing rate at the time he prepared the affidavit was $300.00 per hour, even in light of his impressive credentials in ERISA litigation.  (McDermott Aff. at ¶ 19.)

The court notes that Attorney Walker did obtain excellent results for his client in this case; in fact, it would be difficult to conjure a more positive result from any ERISA litigation matter.  However, this means only that Plaintiff's counsel should be "fully compensated," not

that he should be entitled to a windfall. *Hensley*, 461 U.S. at 434. Therefore, the court finds that the reasonable hourly rate to be assessed as fees for Dennis P. Walker's professional services shall be $290.00.

### B.    *Professional Services During the Administrative Phase of the Case.*

Defendants claim that Plaintiff's attorney fees incurred before the ERISA lawsuit was filed are not compensable under 29 U.S.C. § 1132(g)(1). (Resp. at 8.) (Plaintiff's Motion at 3.)

The plain language of ERISA permits recovery only for fees incurred in an "action." 29 U.S.C. § 1132(g)(1). *LaSelle v. Public Service Co. of Colorado*, 988 F. Supp. 1348, 1352 (D. Colo. 1997); *Hahnemann Univ. Hosp. v. AllShore, Inc.,* 514 F.3d 300 (3rd Cir. 2008)(refusing to allow attorney's fees to prevailing plaintiff in ERISA action for time spent in pre-litigation administrative phase); *Parke v. First Reliance Standard Life Ins. Co*., 368 F.3d. 999 (8th Cir. 2004)(same); *Anderson v. P&G,* 220 F.3d 449 (6th. Cir. 2000)(same). Congress, in enacting ERISA, clearly did not intend to provide for the recovery of attorneys' fees for work performed in connection with the administrative review undertaken by a petitioner's counsel. Along with several other courts in this District, this court agrees with the holding in *Cann v. Carpenters' Pension Trust Fund for Northern California*, 989 F.2d 313 (9th Cir. 1993), in which the Ninth Circuit Court of Appeals held that ERISA's attorneys' fees provision did not permit recovery for fees incurred in the administrative phase of the proceedings. *See LaSelle*, 988 F. Supp. at 1352; *DeGrado*, 2009 WL 1973501, at *3.

The parties in this case, of course, have agreed to be bound by ERISA's Section 1132(g)(1) with respect to the issue of compensation for attorney's fee incurred. (Setl. Agr. ¶

3(c).)  However, while fees for purely administrative work on the benefits determination

concerning Plaintiff, including any appeals she may have submitted to the Plan, is not allowable,

fees can be allowed for work undertaken prior to filing the case, provided that the time was

necessary to the prosecution of the action.

Against this background, the Court has examined the calculation of attorney's fees dated

April 22, 2010 attached to Plaintiff's Motion [Doc. 116-8] (hereinafter "First Fee Request") and

the same First Fee Request as highlighted and objected to by Defendants [Doc. No. 122-5].

Given the filing date of the Complaint on December 20, 2007, Defendants object to the court

awarding fees for all hours submitted on the First Fee Request prior to November 27, 2007.

Upon examination of specific entries on the First Fee Request, the court finds that the work

performed on November 15, 2007 through November 26, 2007 was necessary for the prosecution

of the litigation and is therefore compensable as well as entries subsequent to November 27,

2007.  Compensation for billings dated February 15, 2006 through January 11, 2007, however,

will be excluded from compensation because the work performed during that period is not close

in time to the filing of the Complaint and could not be considered necessary to the prosecution of

the action as required by ERISA.

### C.    Clerical and Administrative Tasks

Defendants claim that 24.6 hours of time included in the First Fee Request as attorney

services performed by Attorney Walker was spent on tasks that are "clerical in nature" and are

not subject to an award.  (Resp. at 9).  Defendants characterize this time as including tasks such

as organizing files, preparing motions for extension of time, reviewing standard court orders and preparing letters to medical providers requesting medical records.

"When a lawyer spends time on tasks that are easily delegable to non-professional assistance," attorney fees are not proper. *New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996).  Reductions in fee awards may be made for "time spent bringing attorneys up to date about the case as attorneys [begin] work on the file for the first time." *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1258 (10th Cir. 2005). *See also Mares*, 801 F.2d at 1202-05 (10th Cir. 1986) (reduction in fees appropriate due to inexperience of an attorney which led to over-billing).

On the First Fee Request, Defendants have objected to numerous scattered billings for which it claims someone other than experienced counsel should have performed the work.  As to the vast majority of these entries the court disagrees with Defendants' position.  For instance, several of the entries involve small increments of time spent reviewing a court order (e.g., March 17, 2008, June 1, 2008 and July 3, 2008) or letters to opposing counsel about routine matters (e.g., June 17, 2008 and August 12, 2008).  While in a large, fully staffed law office, paralegals or junior associates might perform these tasks, it is clear that in small firms an attorney must review court orders and draft letters, or risk being unprepared to meet his legal responsibilities.

However, the court did find several time entries which were clearly clerical in nature and those requests for reimbursement at the rate of $290.00 per hour will be denied.  The court therefore disallows billings on January 25, 2008 (.10), September 22, 2008 (.50) and September 23, 2008 (.50).

### D. Excessive Billing

Defendants also contend that certain of the billing entries on the First Fee Request are excessive. By way of argument, they simply state that they "identified 15.9 hours that appear to be excessive or duplicative" and refer to the color coding on their version of the First Fee Request. (Resp. at 9; Doc. No. 122-5.) These hours concern preparation for a settlement conference with the court on October 2, 2008 as well as issues involving the administrative record. The color coding on the First Fee Request indicates that Defendants object to the billing entries for September 18, 19 and 20, 2008, which total 15.9 hours.

The court notes at the onset that in general the time attributed to various tasks on the First Fee Request is very reasonable. Over the course of a four year period, there are very few large blocks of time spent on any one task, and many entries contain notations of .10 of an hour, an actual time increment of six minutes. However, with reference to the billing for September 18, 2008, a total of 11.2 hours was billed, some of it in large blocks of time. The court finds the billing of 11.2 hours on this date, especially in light of the general references to the activities performed, to be excessive and reduces the allowable hours to 8.00. The billings on September 19 and 20, 2008, however, are not excessive and will be allowed.

### E. Time Billed Subsequent to the Determination that Plaintiff was Entitled to Disability Benefits Pursuant to the Settlement Agreement.

Defendants claim that 35.20 hours billed as professional services incurred subsequent to the Defendants' agreement to pay disability benefits to the plaintiff are not reasonable, "given that Defendant had already provided a statement of benefits to be paid, and Plaintiff had

16

provided Defendants with a statement of fees." (Resp. at 9 and Exs. A and D.) Defendants argue that the Settlement Agreement provides that Defendants will pay reasonable attorney's fees incurred in pursuing Plaintiff's claim for disability benefits and that fees incurred after benefits were determined payable to Plaintiff are not appropriately considered for reimbursement. (*Id.*)

Defendants sent Plaintiff a letter on September 24, 2009, in which they calculated the disability benefits that would be payable to the Plaintiff pursuant to the terms of the Settlement Agreement. (Resp., Ex. A.) The letter identified several areas where the parties did not appear to have contemplated certain aspects about the payment structure for the benefits stating,

> Qwest has determined that Ms. Cross is entitled to a disability pension, rather than LTD benefits, which results in a higher benefit payment to Ms. Cross. In addition, although Ms. Cross was denied short term disability ("STD") benefits effective June 24, 2003, she was on the Qwest payroll through October 20, 2003. Therefore her disability pension effective date is October 21, 2003, rather than June 24,2003.

*Id.* at 1. On October 8, 2009, the parties filed a "Joint Status Report" [Doc. No. 103] with the court wherein the parties agreed, "Defendants provided Plaintiff's counsel with a calculation of benefits to be paid to Plaintiff on September 24, 2009. Plaintiff needs to examine the calculations and plan requirements."

On or about December 10, 2009, after several communications between counsel during the intervening months, Qwest sent Plaintiff a "Pension Benefit Kit" explaining some of Plaintiff's long term disability benefits and disability retirement benefits which she would be receiving. (Resp., Ex. C) The enclosed "kit" purportedly affected Plaintiff's "regular pension

benefit only." (*Id.*)  The letter further stated, "[t]his regular pension benefit is your benefit that will start when your Disability Retirement benefit stops at age 65." (*Id.*)  In an underlined and bold-faced paragraph, the letter cautioned Plaintiff to "carefully review your benefit payment options in the enclosed Calculation Summary." (*Id*. at 2.)  The letter advised the Plaintiff of several options she must elect from to receive benefits and stated, "[i]f any information is incomplete or incorrect, please report the error or omission within thirty (30) days from the day you receive this estimate by calling the Qwest Service Center @ Watson Wyatt at 1-800-729-7526 (option 2, 3, 1). It is very important for you to notify the Qwest Service Center @ Watson Wyatt of any discrepancies in your information." (*Id.*)

Although the proposed changes in the benefits payable structure – apparently by categorizing Plaintiff as on disability retirement rather than long term disability – purportedly worked to the advantage of Plaintiff, it was undoubtedly necessary for her counsel to fully research and understand the new calculations in order to properly advise her regarding her pursuit of disability benefits pursuant to the federal court action.  Therefore, charges relating to review of Plan and other documentation between September 24, 2009 and January 8, 2010 were reasonable and necessary.[6]

Attorney hours billed subsequent to January 8, 2010, however, became administrative in nature.  As previously noted, in late December 2009 or early in January 2010, the Plaintiff was

---

[6] The court excludes from this analysis fees billed from September 14, 15, and 24, 2009 involving the negotiations with respect to the amount of attorney's fees to be included pursuant to the Settlement Agreement which will be addressed *infra*.

paid a lump sum for previously disallowed disability payments and was scheduled to begin receiving monthly payments under the Plan and/or as disability retirement.  While there may have been questions which arose about various aspects of the benefits being paid, the action to actually obtain benefits for the plaintiff was successfully concluded.

As explained in Section B, *infra*, at least two federal District Courts in Colorado have adopted or approved the reasoning in *Cann v. Carpenters' Pension Trust Fund for Northern California*, 989 F.2d 313 (9th Cir. 1993), in which the Ninth Circuit Court of Appeals held that ERISA's attorneys' fees provision did not permit recovery for fees incurred in the administrative phase of the proceedings.  *LaSelle*, 988 F. Supp. at 1352 ; *DeGrado*, 2009 WL 1973501, at *3. The billing entries on the First Fee Request subsequent to January 8, 2010 concern such items as review of Plaintiff's health care benefits under the new structure and other routine matters which could be anticipated to arise in the course of any uncontested benefits award under an ERISA Plan.  Therefore, hourly billings dated January 12, 2010 through February 3, 2010 and billings on February 22, 2010 (correspondence regarding delay of benefits) and on April 9, 2010 will be disallowed and excluded.

> **F.     Fees incurred to Submit Contested Attorney's Fees Provision to the Court for Resolution.**

The First Fee Request submitted as part of Plaintiff's Motion documented 197.90 total hours of professional services spent pursuing an award of benefits for the Plaintiff.  (Mot., Ex. 7.) Of that total amount, 11.1 hours are attributable to the issue of attorney's fees, some occurring in September of 2009 when the parties were working out the details of the expected

award to the Plaintiff, and some in April of 2010 when it became clear the parties were not in agreement about the amount to be paid as "reasonable attorney's fees." (*Id.*) Subtracting those hours, then, Plaintiff's accounting showed 186.80 hours expended on the litigation.

Included in this Order, a total of 30.4 hours of professional time billed has been excluded as compensable under the parties' Settlement Agreement and the statutory provisions governing ERISA. Therefore, the total number of hours the court has declared compensable on the First Fee Request are 156.4. At Mr. Walker's billing rate of $290.00 per hour, the lodestar recovery for Plaintiff, pursuant to the Settlement Agreement and without counting hours spent in litigation over the attorney's fees issues or expert witness and law clerk fees, is $45,356.00.

According to documents presented by Defendants, their highest offer to resolve the attorney fee's dispute pursuant to Section 3(c) of the Settlement Agreement to avoid court intervention was $25,000.00. (Resp., Ex. F, letter dated September 22, 2009.) To that offer of compromise, Plaintiff responded on September 29, 2009 that she was willing to settle the attorney's fees dispute for a payment of $80,000.00 (Resp., Ex. G.) The court finds that neither party's position was entirely reasonable under the circumstances. Plaintiff was asking for an amount which, at the time of the drafting of the letter at Ex. G, was approximately $35,000 more than she would be entitled to recover if there were no exclusions to the attorney's billing records and based on the legally required lodestar method of calculation.[7] Alternatively, it is clear to the

---

[7] Plaintiff's attorney billed approximately 43 additional hours subsequent to the September 29, 2009 letter. Those 43 hours were part of the 197.90 hours eventually claimed as part of the Motion. Mathmatically, 197.90 hours minus 43 hours results in a total number of hours worked as of September 29, 2009 of approximately 154 hours; 154 multiplied by $290.00

court and should have been to Defendants that $25,000.00 would not cover all the allowable

attorney's fees if billed according to a lodestar method at a billing rate of $290.00 per hour

which Defendants did not contest was reasonable.  This was especially true in light of the fact

that Qwest, at that time, was re-configuring the manner in which benefits would be paid to the

plaintiff, thus necessitating additional future attorney hours spent in a benefits/detriments

analysis regarding the new calculations.  Therefore, this court concludes that it was reasonable

for the Plaintiff to bring an attorney fee motion before the court in order to fairly implement the

parties Settlement Agreement.

    That said, however, the motion and briefing actually presented by Plaintiff was not based

upon calculation of a reasonable lodestar amount as was clearly mandated by law, but rather

attempted to argue points of law which were well-settled against Plaintiff's position,[8] based on

erroneous application of the law,[9] or which were based on a novel interpretation of one case

which stretched the bounds of the case holding to the extreme.[10]  These legal arguments resulted

in considerable additional expenditures of attorney time on behalf of the plaintiff and significant

additional expenses to draft responses by Defendants, as well as unwarranted expenditure of

---

equals $44,660.00.

    [8] Initial argument that Plaintiff was entitled to recover a contingency fee pursuant to Title
29 U.S.C. § 1132 by which the Plaintiff had agreed to be bound.

    [9] Applying law established in social security disability cases, a statutory scheme which
allows specifically for contingency fee recovery, to a case clearly controlled by ERISA and its
more limited fee recovery provisions.

    [10] Arguing that *DeGrado* stands for the proposition that experienced ERISA attorneys
were entitled to fee recovery based on a universal hourly rate of $500.00.

21

additional judicial resources.  For the plaintiff alone, Attorney Walker claims to have expended

36 hours of attorney time on the attorney's fees dispute.  Thirty-six hours billed at $290.00 per

hour results in the expenditure of $10,440.00 in fees on this issue.  The court finds this is not a

reasonable fee to present the attorney fee conflict to the court.

The court finds that had Mr. Walker limited his argument to the amounts actually billed

within the confines of the case and a reasonable argument that he was entitled to reimbursement

for the 197.90 hours reflected in his detailed attorney time reports, the Motion and Reply could

have been generated in approximately five hours.  Had the Plaintiff so limited her request for

attorney fees to the established principals of law involved, there would have been no need to

incur the costs associated with the expert, Shawn McDermott, and therefore no need to file

supplemental pleadings.  Therefore the court will award $1,450.00 as reasonable attorney fees

which were necessitated by the legitimate need to present the attorney's fees and costs issue to

the court as contemplated by the parties' Settlement Agreement.

### G. Expert Witness Fees

Plaintiff has requested the court award expenses incurred in retaining Shawn McDermott

as an expert witness for the Plaintiff.  Mr. McDermott's services pertained solely to the issue of

reasonable attorney's fees.  The total amount claimed by Plaintiff for Mr. McDermott is

$3,210.00.

The Tenth Circuit has recognized no provision in the ERISA statutory scheme which

would allow expert witness fees to be awarded, and has stated that an award of expert costs on

an ERISA claim must be based on Title 28 U.S.C. §§ 1821 (controlling per diem, appearance

fees and mileage expenses for federal witnesses) and 1920 (general provisions for taxation of costs). *Holland v. Valhi Inc*., 22 F.3d 968, 979-80 (10th Cir. 1994) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987) ("absent contract or explicit statutory authority to the contrary," a federal court may not shift expert witness fees, except in the amount allowed by 28 U.S.C. § 1821(b)); *see also Agredano v. Mutual of Omaha Cos*., 75 F.3d 541, 542 (9th Cir. 1996). Title 28 U.S.C. § 1821 limits fees to $40.00 a day for witnesses for attendance at court hearings.

The parties agreed in their Settlement Agreement that "reasonable attorney's fees in conjunction with standards for allowance of attorney's fees for claims for benefits under ERISA, 29 USC § 1132(g)" will be the standard by which they will be bound. (Setl. Agr. at ¶ 3(c).) This court therefore declines to award expert witness fees, finding that such fees are not recoverable under ERISA. Further, the court finds the expert fees were not incurred to pursue the Plaintiff's disability benefits, but rather to justify aggrandizing the amount of attorney fees to be borne by Defendants in the case. Finally, the court also finds that the retention of Shawn McDermott was not warranted in this case and that Plaintiff did not prevail on the issues for which Mr. McDermott's testimony was presented. Therefore, the expert fees claimed, including any appearance fee for Mr. McDermott, are not reasonable under the facts and circumstances of this case and will be excluded from the award.

### H.    Law Clerk Services and Costs.

Defendants have registered no objection to Plaintiff's request for reimbursement for legal fees attributable to professional services of Seth Cedars and $413.76 attributable as costs associated with the litigation.  Upon examination, the court finds these fees and costs to be reasonable and will approve the inclusion of them in the total award.

Wherefore, it is **ORDERED**:

"Plaintiff's Verified Motion for Attorney's Fees and Costs" [Doc. No. 116] is **GRANTED IN PART**.  The Defendants shall pay the sum of $46,806.00 in legal fees attributable to professional services provided by Dennis Walker and $1,224.00 in legal fees attributable to professional services of Seth Cedars and $413.76 attributable as costs associated with the litigation -- for a total payment of $48,443.76 -- to the Plaintiff **on or before January 14, 2011.**

Dated this 30th day of December, 2010.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

24